IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

LOURDES GUADALUPE LORED ALANIS                                          PLAINTIFF

v.                                                    CIVIL ACTION NO. 3:16-cv-00268-GHD-RP

JOSE CARMEN BADILLO REYES                                               DEFENDANT

**MEMORANDUM OPINION GRANTING
MOTION FOR TEMPORARY RESTRAINING ORDER AND SETTING
PRELIMINARY INJUNCTION HEARING**

Presently before the Court is an expedited motion for preliminary relief and for an expedited hearing under the Convention on the Civil Aspects of International Child Abduction (the "Hague Convention") [8] filed by Petitioner Lourdes Guadalupe Lored Alanis ("Petitioner"). Petitioner's present motion shall be construed as a motion for a temporary restraining order and preliminary injunction hearing pursuant to Rule 65(b) of the Federal Rules of Civil Procedure. In her motion, Petitioner requests the following expeditious relief: an Order (a) prohibiting Respondent from removing the child from the jurisdiction of this Court and (b) setting a hearing upon the petition and commanding Respondent to appear before the Court with the child to show cause why she was allegedly unlawfully abducted and retained in the United States in alleged contravention of Mexican Law and the Hague Convention. Upon due consideration, the Court finds as follows.

*I.     Factual and Procedural Background*

On November 21, 2016, Petitioner filed her petition [1] for return pursuant to the Hague Convention. Petitioner maintains that she is a citizen of Mexico; that Respondent Jose Carmen Badillo Reyes ("Respondent") is also a citizen of Mexico; and that the two are the parents of a daughter, DFB, who was born in Mississippi in September of 2007 and is a citizen of the United

1

States. Pet. [1] ¶ 4. Petitioner further maintains that from September 2007 and December 2009, Petitioner, Respondent, and DFB lived in Horn Lake, Mississippi, but that in December of 2009, with the written consent of Respondent, Petitioner and DFB moved to Petitioner's family home in Ciudad Fernandez, San Luis Potosi, Mexico; that Petitioner and Respondent ceased being romantically involved; and that Respondent ceased all contact and support of DFB in 2012. *Id.* ¶ 5. Petitioner next maintains that from December 2009 to August 2016, DFB lived with Petitioner in Mexico. *Id.* ¶ 6. Petitioner avers that on August 14, 2016, Petitioner granted temporary authorization for DFB to travel with Respondent's sister, Anel G. Valdivia, from Mexico to Valdivia's home in Irving, Texas, and that Respondent subsequently discovered via Facebook that DFB was in Irving, Texas. *Id.* ¶ 7. Petitioner further avers that on August 31, 2016, Respondent traveled to Irving, Texas, took custody of DFB, and removed her to Horn Lake, Mississippi—all without the consent of Petitioner. *Id.* ¶ 8. Petitioner maintains that more than ten times she requested that Respondent return DFB to Petitioner in Mexico, but that Respondent refuses to respond to her requests and no longer answers the telephone when Petitioner calls from her phone number. *Id.* ¶ 9. Finally, Petitioner avers that she filed an application pursuant to the Hague Convention with the Mexican authorities on September 26, 2016. *Id.* ¶ 10.

Petitioner requests that the Court enter an Order granting her preliminary relief by prohibiting the removal of the child from the jurisdiction of this Court. Petitioner further requests that the Court issue an order or orders commanding Respondent to voluntarily appear or be brought before the Court with the child to show cause for why the child has been kept from her mother, Petitioner, in alleged contravention of Mexican Law and the Hague Convention. On

December 12, 2016, the Desoto County Sheriff's Department served Respondent with the petition. *See* Summons Returned Executed [7].

## *II.     Federal Rule of Civil Procedure 65(b) Standard*

According to Rule 65(b) of the Federal Rules of Civil Procedure,

> [t]he court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if:
>
> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
>
> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1). The Court may issue a temporary restraining order if the movant establishes "that [s]he is likely to succeed on the merits, that [s]he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in h[er] favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008). Furthermore, "[i]njunctive relief [is] an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.* at 22, 129 S. Ct. 365.

A. <u>Likelihood of Success on the Merits</u>

First, under Rule 65(b), the Court must find that the Petitioner will likely succeed on the merits of her petition before granting the requested temporary restraining order and other relief. The petition has been filed pursuant to the Hague Convention and the International Child Abduction Remedies Act ("ICARA").

"The Hague Convention was adopted to address the problem of international child abductions during domestic disputes." *Berezowsky v. Ojeda*, 765 F.3d 456, 465 (5th Cir. 2014)

(citing *Lozano v. Montoya Alvarez*, — U.S. —, 134 S. Ct. 1224, 1228, 188 L. Ed. 2d 200 (2014)). The objectives of the Hague Convention are: (1) "to secure the prompt return of children wrongfully removed to or retained in any Contracting State," and (2) "to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in other Contracting States." Hague Convention, art. 1.

"When evaluating a Hague Convention claim, we do not assess the merits of the underlying custody dispute. Rather, our inquiry is limited to determining whether or not the child has been wrongfully removed from their country of 'habitual residence.' " *Berezowsky*, 765 F.3d at 465. Therefore, the ultimate question before the Court is whether or not DFB has been wrongfully removed from her country of habitual residence by bringing her back to Mississippi. Because Petitioner filed this action under the Hague Convention, she must ultimately demonstrate by a preponderance of the evidence that Mexico was DFB's habitual residence in order to establish her claim that DFB was wrongfully removed.

Petitioner maintains that she had rights of custody with respect to DFB at the time Respondent allegedly wrongfully removed her to the United States; Petitioner claims custody of DFB based on the law of DFB's alleged habitual residence, Mexico, and cites to the Hague Convention's definition of "rights of custody." *See* Hague Convention, art. 5. Petitioner cites to the Family Code of the State of San Luis Potosi providing that when one parents stops exercising parental rights, the other parent is responsible to exercise parental rights, and when, as here, parents of a child born outside marriage separate from each other, in the absence of a custody agreement, the court determines custody rights for the best interests of the child. *See* Pet. [1] ¶ 14–15 (citing Excerpts from Family Code of State of San Luis Potosi [1-4]). Petitioner maintains that at the time of the alleged wrongful retention of DFB, Petitioner was exercising

parental responsibilities because Respondent had not exercised any parental responsibilities for approximately four years at the time of the wrongful retention. *Id.* ¶ 15.

The facts presented in the petition lead the Court to believe that there is a likelihood of success for Petitioner's action on the merits. The Court will only make findings on the documents that are properly admitted during the hearing with a proper English translation. Therefore, any party wishing to rely on Spanish language documents must provide a certified English translation with such documents, offering copies and notice to all parties and this Court prior to a scheduled hearing.

### B. Likelihood of Irreparable Harm in the Absence of the Requested Relief

Given the risk that Respondent could further relocate DFB, the Court finds that Petitioner would likely be irreparably harmed in the absence of the requested relief. The Court cannot ignore the potential danger of the relocation of DFB. Although notice need not be given, due to the nature of the case, notice will be given to Respondent via service of this memorandum opinion and corresponding order by the United States Marshals Service.

### C. The Balance of Equities Tips in Petitioner's Favor

The Court finds that the balance of equities tips in Petitioner's favor. First, this Order merely requires that DFB remain with Respondent, thus not imposing any injury or hardship to Respondent. Second, Respondent apparently resides in Horn Lake, Mississippi, within the district and division, and is thus not burdened by the minimal travel required to appear at a hearing.

### D. The Issuance of the Temporary Restraining Order Benefits the Public's Interest

Finally, "[t]he public interest analysis for the issuance of [injunctive relief] requires [district courts] to consider whether there exists some critical public interest that would be

5

injured by the grant of preliminary relief." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1138 (9th Cir. 2011) (citation omitted). Furthermore, the ICARA authorizes a court to "take or cause to be taken measures under Federal or State law as appropriate . . . to prevent the child's further removal or concealment before the final disposition of the petitioner." 42 U.S.C. § 11604(a). Thus, the Court finds that there is no public interest that would be injured by the issuance of a temporary restraining order.

According to Federal Rule of Civil Procedure 65(c), "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant give security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restraining." Based on the fact that there is little likelihood that Respondent will suffer any costs or damages during the pending expedited proceedings, the Court WAIVES any required security by Petitioner at this time. Should Respondent prove otherwise, or should the need arise for security, the Court will order such additional security at that time.

The Court finds that Petitioner's request has merit. However, the restraining order must not last beyond fourteen days, *see* Fed. R. Civ. P. 65(b)(2), and a preliminary injunction hearing should occur at the earliest possible time, *see* Fed. R. Civ. P. 65(b)(3), with all parties present. Fourteen days' notice must be given before a hearing on the motion. *See* Fed. R. Civ. P. 6(c). Therefore, the Court hereby sets the preliminary injunction hearing on Thursday, January 26, 2017 at 1:30 p.m. to allow Respondent an opportunity to address the merits of this matter.

Therefore, the expedited motion for preliminary relief and for an expedited hearing under the Hague Convention [8] filed by Petitioner Lourdes Guadalupe Lored Alanis is GRANTED.

The temporary restraining order shall last until Thursday, January 26, 2017, 1:30 p.m., at which time it will expire.

Until such time, neither Respondent nor anyone else shall remove DFB, the minor child, from the State of Mississippi nor change the child's present location; the United States Marshals Service shall serve Petitioner's expedited motion for preliminary relief and for an expedited hearing under the Hague Convention [8], along with this memorandum opinion and corresponding order, on Respondent Jose Carmen Badillo Reyes at 5867 Iraquois Drive, Horn Lake, Mississippi 38637; and if available, the United States Marshals Service shall take possession of the minor child's passports and all other travel documents for safekeeping.

An order in accordance with this memorandum opinion shall issue this date.

THIS, the 9th day of January, 2017.

_____
SENIOR U.S. DISTRICT JUDGE